IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WES A. CURRY, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-25-01468 |
| SOUTHWEST AIRLINES CO. *et al.*, | * | |
| Defendants. | * | |

# MEMORANDUM OPINION

Plaintiff Wes A. Curry, Jr. ("Plaintiff"), who is self-represented, filed a Third Amended Complaint against his former employer, Southwest Airlines Co. ("Southwest") and his labor union, Transport Workers Union Local 555 ("the Union" and, with Southwest, "Defendants"), asserting claims arising out of his employment and termination. ECF 19. Defendants have each filed a motion to dismiss, ECF 24 (Southwest) and ECF 27 (the Union), which Plaintiff has opposed, ECF 37, 38. Both Southwest (ECF 41) and the Union (ECF 39) also filed replies. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Defendants' motions to dismiss must be granted and Plaintiff's claims will be dismissed without prejudice.

## I.   LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Here, Defendants invoke two provisions of Federal Rule of Civil Procedure 12. Rule 12(b)(1) deals with jurisdiction and governs claims, like Defendants make here, that they are entitled to Eleventh Amendment immunity. *See Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

2

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim because plaintiff failed to allege it in the complaint).

## II.     FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Third Amended Complaint and are assumed to be true for purposes of adjudicating this motion. Plaintiff worked for Southwest as a Ramp Agent at Baltimore/Washington International Thurgood Marshall Airport ("BWI") from June 23, 2015, until October 13, 2023. ECF 19 ¶ 3. Plaintiff suffers from both Crohn's disease and "diagnosed mental health conditions." *Id.* ¶ 7. In September, 2017, following a mental health crisis, Plaintiff contacted Southwest's Accommodations Team. *Id.* ¶ 8 Ultimately, Plaintiff decided to utilize Family and Medical Leave Act ("FMLA") protections instead of requesting accommodations. *Id.*

Southwest granted Plaintiff FMLA coverage, and he used it "intermittently" for his Crohn's disease and mental health. *Id.* ¶ 9. He also took extended medical leave during periods of severe illness. *Id.* Southwest "often" misclassified Plaintiff's absences as regular sick days or even as no call/no shows, instead of FMLA leave. *Id.* ¶ 10. Plaintiff was subjected to fact-finding meetings to explain absences that should have been FMLA-protected. *Id.* ¶ 12. During a fact-finding meeting,

an office manager suggested that Plaintiff was abusing FMLA by accepting shift trades and then calling out sick. *Id.* ¶ 11.

Plaintiff's first overnight assignment was a double shift spanning September 30–October 1, 2023. *Id.* ¶ 14. While on duty, Plaintiff experienced a Crohn's flare-up and was unable to make it to his assigned flight (Flight 1279) on time. *Id.* He arrived at the gates after his tasks had been completed by others. *Id.* He remained at the airport in the international pier and experienced intense gastrointestinal symptoms, requiring him to be close to a restroom. *Id.* ¶¶ 14, 15. He stationed himself in Southwest's breakroom on the international pier, where two other Ramp Agents were present. *Id.* Plaintiff responded to his next scheduled flight around 5:30 am and disclosed his condition to a supervisor. *Id.* ¶ 16.

On October 6, 2023, Southwest required Plaintiff to report for work for one hour despite his being sick. *Id.* ¶ 13. His request to be excused without pay was denied, and Plaintiff was told he was "on a final warning stemming from previous misreported FMLA absences." *Id.* Upon his arrival, Southwest issued him a fact-finding notice and administratively suspended him pending investigation of the events of September 30-October 1. *Id.* ¶¶ 13, 14. At the fact-finding meeting (apparently held that same day), Plaintiff explained his position to the company despite the fact that he was "in a physically and emotionally vulnerable state." *Id.* ¶¶ 17A, 18. He offered to show photographic evidence to the union grievance specialist to support his claim, but the offer was dismissed because photographs can be edited. *Id.* ¶¶ 19, 20. Plaintiff also provided a parking garage receipt showing that he did not leave the premises and asked the investigators to review surveillance footage from the international pier. *Id.* ¶ 21. Nevertheless, Southwest terminated Plaintiff's employment. *Id.* ¶ 17.

Plaintiff contends that he knows of "multiple current employees who have missed flights without being terminated." *Id.* ¶ 25. He alleges that his termination "was motivated by animus toward his disability and FMLA use." *Id.* ¶ 24.

Plaintiff had difficulty ascertaining the identity of and reaching his union representative. *Id.* ¶ 26. His assigned grievance specialist was not responsive to his calls and did not pursue investigatory steps Plaintiff suggested. *Id.* ¶¶ 27, 31. The assigned grievance specialist left a "hostile" message for Plaintiff after Plaintiff attempted to contact another representative for assistance. *Id.* ¶ 27. At some point after his October 13, 2023 termination, Plaintiff's grievance was denied without a thorough investigation. *Id.* ¶¶ 28, 29. Plaintiff was not offered an opportunity to respond or appeal. *Id.* ¶ 32.

On December 22, 2023, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge, which reads as follows:

> I began my employment at the above-named employer on June 23, 2015, and my most recent position was a Ramp Agent. My immediate Manager was Lauren Clear. The employer was aware of my disability. During my employment, I have had FMLA and reasonable accommodations in place to be able to perform the essential functions of my job. In July 2023 Ms. Clear had a meeting with me and I was placed on a final written warning for attendance because I exceeded the employer's attendance points system. In September 2023, I had a disability related flare-up which caused me to miss a flight. As a result, I was suspended pending a fact-finding meeting. On October 6, 2023, a fact-finding meeting was held and effective September 30, 2023, I was discharged.
>
> The reason given for the discharge was I failed to report to my flight, missed flight and unacceptable behavior.
>
> I believe I have been discriminated and retaliated against because of my disability in violation of the Americans with Disabilities Amendments Act of 2008, as amended with respect to discharge

ECF 24-2 at 2–3.

Plaintiff filed the instant lawsuit on May 6, 2025. ECF 1.

5

## III. ANALYSIS

### A. Southwest's Motion to Dismiss

Plaintiff has asserted ten counts against his former employer, some of which are properly grouped for consideration because they allege violations of the same statutes: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), (2) retaliation in violation of the ADA, (3) interference with FMLA rights, (4) retaliation in violation of the FMLA, (5) retaliation for requesting a reasonable accommodation in violation of the ADA, (6) hostile work environment in violation of the ADA, (7) discriminatory discharge in violation of the FMLA, (8) failure to accommodate in violation of the ADA, (9) negligent infliction of emotional distress, and (10) disparate treatment in violation of the ADA and FMLA. Those counts are addressed, grouped together where appropriate, below.

#### 1. Failure to Exhaust Administrative Remedies

Curry's EEOC charge alleges only that he was discriminated and retaliated against "with respect to discharge." ECF 24-2 at 3. He also expressly asserts that he had "reasonable accommodations in place to be able to perform the essential functions of my job." *Id.* at 2. There is no mention, anywhere in his charge, of either a failure to provide reasonable accommodations under the ADA or an ongoing ADA hostile work environment claim.[1]

A plaintiff wishing to assert an ADA claim must first file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); *see also McCullough v. Branch Banking & Tr. Co.*, 35

---

[1] Also, Plaintiff has not plausibly stated a claim for either cause of action. He has alleged neither severe or pervasive disability-based harassment nor that he has a disability that Southwest refused to accommodate. In fact, he specifically alleges that he decided not to seek a disability accommodation and instead chose to "utilize FMLA protections going forward." ECF 19 ¶ 8.

6

F.3d 127, 131 (4th Cir. 1994). Only those claims raised in the charge of discrimination may later be pursued in court. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge.") Although "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality,' [courts] are not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)) (citations omitted). Because Plaintiff's administrative charge did not mention failure to accommodate a disability or an ongoing hostile work environment, Counts VII and IX of the Third Amended Complaint must be dismissed.

### 2. Discriminatory Termination on Basis of Disability

Plaintiff also claims that he was discriminatorily terminated, or received disparate treatment culminating in termination, on the basis of his disability, in violation of the ADA. For disability discrimination, a plaintiff must show (i) he was disabled, (ii) he was discharged, (iii) he was fulfilling his employer's legitimate expectations when he was discharged, and (iv) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004). If the employee makes this showing, "the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). If the employer meets that burden of production, the burden shifts back to the plaintiff to show that the explanation was "actually a pretext for discrimination." *Id.* (quoting *Hill*, 354 F.3d at 285). "To raise a reasonable inference of disability discrimination in a wrongful discharge case,

an employee must allege that his disability was a 'but-for' cause of his termination." *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024) (citing *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016)).

Plaintiff's allegations, which include an independent, non-discriminatory reason for termination, do not suffice to plead a plausible disability discrimination claim above a speculative level. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (finding that where plaintiff had pleaded facts establishing a non-discriminatory reason for termination, the termination "may have been hasty or even unfair, but it was not racially motivated" and the claim was subject to dismissal); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (finding a failure-to-promote claim subject to dismissal where the plaintiff had pleaded that her employer did not want to remove her from her existing job until they could find a suitably talented replacement). Like the plaintiffs in those two cases, Plaintiff himself pleads the existence of facts which constitute a legitimate, non-discriminatory reason for Southwest's termination decision. Specifically, he alleges that he checked in for his double shift on September 30, 2023, missed the flight to which he was assigned, did not work on any assignments until the next morning, and did not notify his supervisor of his illness or his whereabouts until 5:30 am on October 1, 2023. He also alleges that Southwest's badge swipe data (erroneously) reflected that he left the secure area of the airport for 10 hours during his shift. ECF 19 ¶ 22.

While Plaintiff contests the merits of Southwest's termination decision and contends that he was, in fact, at the airport the entire time, he does not dispute that he missed the flight and failed to notify his supervisor until 5:30 am. With those facts, he is unable to establish that he was performing his job to the reasonable satisfaction of his employer and has pleaded the existence of

a legitimate, non-discriminatory reason for his termination, making his assertions of discrimination implausible. His claims for ADA discrimination in Counts I and XI must be dismissed.

### 3. Retaliation under the ADA or FMLA

Plaintiff also alleges that he was retaliated against for protected activity under the ADA and the FMLA. He asserts that his ADA-protected activity was "requesting and using medical leave and accommodations" and "request[ing] reasonable accommodations for his disability during his employment, including intermittent leave and schedule flexibility under the ADA." ECF 19 ¶¶ 58, 73. However, by his own assertions, Plaintiff's only contact with Southwest's Accommodations Team occurred in 2017, years before his eventual termination in 2023. And he explains that he abandoned his ADA accommodations request, instead choosing to avail himself of FMLA leave. Because there is no temporal connection between his (eventually unpursued) request for ADA accommodations and his termination years later, he has not asserted a plausible ADA retaliation claim.

The FMLA also protects employees from retaliation for exercising their substantive FMLA rights. 29 U.S.C. § 2615(a)(2) states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). Plaintiff's complaint, however, does not contain sufficient specifics to state a plausible FMLA retaliation claim. While he alleges that he requested and took FLMA leave several times over the years, and that some of his requests for FMLA leave were mischaracterized, his complaint contains no details about when he made the requests, who he requested leave from, or how those requests were connected (temporally or otherwise) to his termination. He does allege that on one unspecified occasion during "his most recent fact-finding meeting prior to the incident at issue in

this case," "an office manager" questioned whether he was abusing FMLA leave. ECF 19 ¶ 11. Again, he provides no temporal information connected to that event or whether the "office manager" in question was involved in his termination. As pleaded, then, Plaintiff's complaint does not state a plausible FMLA retaliation claim. Counts II, IV, and VI must be dismissed without prejudice.

### 4. Interference with FLMA Rights

Plaintiff also alleges that Southwest interfered with his FMLA rights in several ways: by discharging him, misclassifying his absences, and engaging in disparate treatment. "[T]o make out an FMLA interference claim, an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused him harm." *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023) (citing *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015)). The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

An employee is eligible for FMLA leave only if he has not already taken more than twelve weeks of such leave in the previous twelve months. 29 U.S.C. § 2612(a)(1). Plaintiff's complaint has not provided any information about his use of FMLA leave to allow this Court to assess his continued eligibility for additional leave. Thus, he has not alleged facts to support the first element, and all of his FMLA claims are subject to dismissal.

In addition, Plaintiff asserts in conclusory fashion that "medically protected absences were often misclassified as regular sick days or even as no call/no shows." ECF 19 ¶ 10. But Plaintiff offers no information about the timing or content of those leave requests or absences. He has not,

10

at this point, provided enough detail to state a plausible claim, so his FMLA interference claims in Counts III, VIII, and XI must be dismissed.

### 5. Negligent Infliction of Emotional Distress (Count X)

Maryland courts do not recognize a claim for "negligent infliction of emotional distress," so Count X must be dismissed. *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 517–18 (1995). In his opposition brief, Plaintiff suggests that his claim could be converted to intentional infliction of emotional distress ("IIED"), which is a recognized claim in this state.[2] ECF 37 at 10–11. He cannot, however, amend his complaint to assert a different claim in the context of motions briefing. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997).

### B. Union's Motion to Dismiss

Plaintiff also asserts two claims against the Union: breach of the duty of fair representation under federal labor law (Count V) and negligent infliction of emotional distress (Count X). Each count is subject to dismissal.

Because carriers by air (including Southwest) fall under the Railway Labor Act ("RLA"), that statute governs the duty of fair representation claims brought by Southwest's employees. 45

---

[2] Even if his claim could be converted in this way, this Court notes that the standard for an IIED claim in Maryland is extraordinarily high. Such a claim requires four elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). The extreme and outrageous element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Indeed, in the first thirty years after the Maryland "Court of Appeals recognized the tort of IIED, it [ ] upheld such claims only four times." *Lasater v. Guttmann*, 194 Md. App. 431, 449 (2010). Plaintiff's assertions regarding Southwest's enforcement of its personnel leave policies, even if found to be erroneous, sloppy, or poorly undertaken, would not come close to meeting the "extreme and outrageous" standard.

11

U.S.C. § 181. In *Dement v. Richmond, Fredericksburg & Potomac R.R. Co.*, 845 F.2d 451, 460 (4h Cir. 1988), the Fourth Circuit held:

> The statute of limitations applicable to a cause of action for a breach of the duty of fair representation under the RLA is six months. *Triplett v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Local Lodge No. 308*, 801 F.2d 700, 702 (4th Cir.1986). The statute begins to run at the time the cause of action accrues. *See id.* at 703.

The Fourth Circuit further explained that "a cause of action for breach of the duty of fair representation accrues at the point where the grievance procedure has been exhausted or otherwise breaks down to the employee's disadvantage." *Dement*, 845 F.2d at 460. Accrual is determined by assessing "when the plaintiff knew, or should have known through the exercise of due diligence, that his claim had accrued." *Id.* (citing *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir.1985)).

Here, Plaintiff's claim accrued when his grievance was denied and he was not afforded an opportunity to appeal. Plaintiff's Complaint does not offer specific dates for those actions, but a reasonable reading of his allegations suggests that it happened within weeks of his October, 2023 termination. *See* ECF 19 ¶¶ 26, 27, 29 (referring to 'weeks' and 'just a few days' as the timing for the Union-related activities). Assuming that to be the case, Plaintiff's duty of fair representation claim (Count V) must be dismissed as time-barred.[3] Typically, such dismissal would be with prejudice. However, given the lack of clarity as to the precise dates of the relevant events, at this stage this Court will dismiss Count V without prejudice.

---

[3] Plaintiff's suggestion in his opposition that his claim did not accrue until he sent a follow-up "demand letter" in 2025, ECF 38 at 2, is unpersuasive, as the relevant standard is an objective one and Plaintiff "knew or should have known" of his claim against the Union years earlier. A plaintiff cannot rejuvenate an already-expired limitations window simply by sending a new demand letter.

Plaintiff's "negligent infliction of emotional distress" claim in Count X appears to be asserted against both the Union and Southwest. For the reasons set forth above with respect to Southwest, that claim is not viable in Maryland and also must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF 24 and ECF 27, are granted and Plaintiff's claims are dismissed without prejudice. This case will be closed, subject to reopening should Plaintiff file a motion for leave to amend within forty-five days. A separate Order follows.

Dated: November 3, 2025                          /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge